IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| EVELYN H. DAVIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 3:15-CV-3-WKW |
| | ) | [WO] |
| JOHNSON MACK DAVIS, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

On April 11, 2014, two days prior to his death, L. A. Davis changed the beneficiary designation on his life insurance policy from his wife (Plaintiff) of nearly two decades to his brother (Defendant). Plaintiff contends that, while her husband was in the final throes of his battle with lung cancer, her brother-in-law procured the beneficiary designation by undue influence or fraud. The sole issue remaining in this federal-question, interpleader action is whether L. A. Davis's beneficiary designation, dated April 11, 2014, is invalid due to either undue influence or fraud.

On August 8, 2017, the court presided over a bench trial in this action. At the close of Plaintiff's case, Defendant moved for judgment as a matter of law, which is construed as a motion for judgment on partial findings under Federal Rule of Civil Procedure 52(c). The court orally granted the motion; this opinion

memorializes the supporting findings of fact and conclusions of law.  *See* Fed. R. Civ. P. 52(a).

# I.  JURISDICTION AND VENUE

This federal-question, rule-interpleader action originated in the Circuit Court of Macon County, Alabama, when Plaintiff filed a state-law declaratory judgment action against Johnson Mack Davis and Metropolitan Life Insurance Company ("MetLife").  MetLife, which administered the Policy, removed the action to the Middle District of Alabama on grounds of complete preemption under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§ 1001, *et seq.*[1]  Accordingly, subject-matter jurisdiction is proper pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1441, and 29 U.S.C. § 1132(e)(1).  The parties do not contest personal jurisdiction or venue.

# II.  STANDARD OF REVIEW

In a nonjury case, the district judge has "the exclusive province . . . to assess the credibility of witnesses and to assign weight to their testimony."  *Hearn v. McKay*, 603 F.3d 897, 904 (11th Cir. 2010) (alteration omitted).  That province extends to entering judgment under Rule 52(c).  *See United States v. $242,484.00*, 389 F.3d 1149, 1172 (11th Cir. 2004).  Pursuant to Rule 52(c), the court

---

[1]  After MetLife deposited the disputed funds into the court's registry, the court discharged it from further liability with respect to the disputed funds and realigned the parties.

"evaluate[s] the evidence without making special inferences in the Plaintiff's favor." *Emerson Elec. Co. v. Farmer*, 427 F.2d 1082, 1086 (5th Cir. 1970).[2] It "can resolve conflicts in the evidence and make credibility determinations." *Caro-Galvan v. Curtis Richardson, Inc.*, 993 F.2d 1500, 1504 (11th Cir. 1993); *see also Denson v. United States*, 574 F.3d 1318, 1334 n.48 (11th Cir. 2009) (Judgment is appropriate under Rule 52(c) "if . . . based on the evidence before it, the court finds, after resolving the credibility issues and weighing the evidence, for the defendant."). Notably, Plaintiff called Defendant as an adverse witness in her case-in-chief.

## III. FINDINGS OF FACT[3]

In 1996, Plaintiff and L. A. Davis were married in Macon County, Alabama. L. A. Davis's twenty-year, intermittent career with General Motors Co. in Defiance, Ohio, kept them from living under the same roof from 2000 to 2007. The couple also separated and lived apart for sixteen months between 2008 and 2010, but they reconciled their differences and moved back in together, residing in Tuskegee, Alabama.

---

[2] *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (adopting as binding precedent all decisions of the former Fifth Circuit issued prior to October 1, 1981).

[3] The trial record consists of the parties' exhibits and the testimony of witnesses, and, in this opinion, uncited quotations are from the testimony at the bench trial. As will become apparent, the absence of evidence is more telling than the presence of evidence.

Through his employer, General Motors, L. A. Davis earned benefits, including a group term life insurance policy ("Policy"), administered by MetLife. In 2008, he signed a MetLife beneficiary designation form, naming Plaintiff as the primary beneficiary on the Policy and two of his children, Loisa and Darius, as contingent beneficiaries in equal shares.[4]  Plaintiff testified, though, that she had been the beneficiary on the Policy for many years, even prior to 1996.

Throughout Plaintiff and L. A. Davis's marriage, L. A. Davis had strong relationships with his multiple siblings, but he was particularly close to Defendant, his younger brother.  In 2013, Defendant lived in Prattville, but stayed most nights with his sister, Mamie.  Mamie lived in Hurtsboro, Alabama, which is less than thirty miles from Tuskegee.  Defendant and L. A. Davis were so close that Plaintiff became annoyed with Defendant's daily visits to her and L. A. Davis's home during the two to three years preceding L. A. Davis's cancer diagnosis.  The purpose of those visits, according to Plaintiff, was to ease Defendant's loneliness after his wife died; according to Defendant, the purpose of the visits primarily was to fish.

In September 2013, L. A. Davis received a diagnosis of lung cancer.  His treatment entailed multiple medications, radiation, doctor visits, and several

---

[4] When they wed, L. A. Davis had a son, Darius.  Plaintiff and L. A. Davis had a daughter together, Loisa, who now is an adult.  L. A. Davis also has a second daughter, who is a minor.

hospitalizations. His last hospitalization from May 31, 2014, to April 8, 2014, in particular that last day, is when the present legal dispute started percolating. Although Plaintiff did not provide much detail, by this point she viewed her relationships with Defendant and at least two of L. A. Davis's sisters (Mamie and Isa Mae) as strained.

During this last hospitalization, L. A. Davis learned that his physicians had determined that they could provide no further treatment for his terminal cancer. Hence, on the morning of April 8, 2014, Plaintiff went to the hospital to gather L. A. Davis's belonging and take him home. But L. A. Davis needed an oxygen tank, which the hospital did not have on hand, and the delivery of a tank from out of town delayed his release. This gave Plaintiff the opportunity to take care of an unrelated matter, while one of L. A. Davis's sisters stayed at the hospital with L. A. Davis. When Plaintiff returned that same afternoon, Defendant was in the hospital room, and L. A. Davis informed Plaintiff "he was riding with his brother, Mack Davis." Plaintiff was not happy with this change of events, but, not wanting to upset her husband and risk exasperating his cancer, she did not vocalize her objection to her husband leaving the hospital with Defendant. Plaintiff assumed also that Defendant would be driving her husband to their marital home, although there had been no explicit discussion on that matter. That assumption turned out to be wrong.

Plaintiff says that Defendant called Plaintiff when he was en route with L. A. Davis and said "that he wasn't trying to take over." Upset, Plaintiff retorted that he had "taken over" and that she was holding him "fully responsible" if anything happened to L. A. Davis "while he [was] in [his] possession." At trial, Plaintiff could not recall how Defendant responded to her ultimatum. There was no discussion during this phone call about where Defendant was taking L. A. Davis, but, by this time, Plaintiff speculated that something was "up his sleeve." Defendant denies that the phone call occurred.[5]

Plaintiff contends that, after that call, she stopped by the bank to make sure "they didn't get any money out" and consulted with a local probate judge. Although she still was unaware that L. A. Davis was not coming home, she knew something was awry when she drove by her home and saw that L. A. Davis was not there yet. Labeling it "lady's intuition," Plaintiff knew at that point that her husband was at Mamie's in Hurtsboro, where Defendant had been living since his home in Prattville burned. Plaintiff did not stop at her house, but instead turned around and headed to Hurtsboro. For one thing, she had L. A. Davis's medications that he would need. When she arrived, her sisters-in-law, Mamie and Isa Mae, as well as others, were standing together outside the home. Plaintiff perceived that they "look[ed] like they were about to attack [her]," so she summoned the only

---

[5] The factual dispute is immaterial to the resolution of the outcome of this case.

"friendly one" of the group she could identify. She handed that individual L. A. Davis's medication and left without seeing L. A. Davis.

Plaintiff testified that she believed that her husband had been taken against his will to Mamie's, and, at some point, she told Defendant that she wanted L. A. Davis to come home. During this time, she was unable to reach L. A. Davis on his cell phone because he did not have any pre-paid minutes on his phone card.[6] Consequently, she made several calls to the Macon County Sheriff's Office for her husband's rescue, but Hurtsboro is in neighboring Russell County, a different law enforcement jurisdiction. On April 12, four days after her husband's release from the hospital, Plaintiff called the Russell County Sheriff's Office. She informed dispatch that her husband was the victim of a kidnapping, was being held at his sister's home in Hurtsboro, and was not receiving proper medical attention.

In response to Plaintiff's call, a deputy sheriff and medical unit went to Mamie's home. The deputy spoke with L. A. Davis, who said "he was in good hands," and the medical unit reported that L. A. Davis's vital signs were normal and that he was not in medical distress. (Russell Cnty. Sheriff's Office, Incident Report, dated 04/12/14 (Def.'s Tr. Ex. 1).) The sheriff's office took no further action. In the meantime, Plaintiff waited at a nearby hospital, anticipating that an

---

[6] But she testified that she did talk to him once by telephone. That call preceded her call to the Russell County Sheriff's Office.

ambulance would transport her husband there.  After waiting thirty-five minutes—
a reasonable time for vehicle travel from Mamie's to the hospital—Plaintiff called
Mamie's home and spoke to one of the siblings.  Plaintiff learned of L. A. Davis's
condition, which apparently had worsened, and he died in the early morning hours
of the next day, April 13.

Unbeknownst to Plaintiff, two days prior to his death, on April 11, L. A.
Davis changed the beneficiary designation on the Policy, revoking all previous
designations and designating Defendant as the beneficiary.  Defendant was not
present when L. A. Davis signed the form, but, at L. A. Davis's direction,
Defendant faxed the beneficiary designation form to MetLife.  According to
Defendant, L. A. Davis orally directed Defendant to give each of his three children
$10,000 and told Defendant he could do "whatever" he wanted with the remaining
life insurance proceeds.

Contrary to her pretrial stipulation, Plaintiff testified, at trial, that the
signature on the beneficiary designation form was not L. A. Davis's.  She said,
although the signature resembled L. A.'s signature prior to his cancer diagnosis, it
could not have been his current signature because he "was so weakened by his
cancer" and had suffered paralysis in his right hand after his cancer diagnosis.

# IV. DISCUSSION

The parties have stipulated that, in this ERISA action where federal common law controls, resort to Alabama substantive law is appropriate.[7]   Plaintiff challenges the validity of the April 11, 2014 beneficiary designation form.   Two claims have emerged—undue influence and fraud.   Both of Plaintiff's claims fail for lack of proof.[8]

## A.   <u>Undue Influence</u>

"The essence of undue influence is that the will of the influencing party so overpowered the will of the other party that the other party's act essentially became

---

[7] *See Tinsley v. Gen. Motors Corp.*, 227 F.3d 700, 704 (6th Cir. 2000) ("Since ERISA does not contain any provisions regulating the problem of beneficiary designations that are forged, the result of undue influence, or otherwise improperly procured, it appears that federal common law must apply to [the plaintiff's] claims" and that, given the absence of federal common law, "we look to state-law principles for guidance."); *see also Horton v. Reliance Standard Life Ins. Co.*, 141 F.3d 1038, 1041 (11th Cir. 1998) (acknowledging in an ERISA action that, "[w]hen crafting a body of common law, federal courts may look to state law as a model because of the states' greater experience in interpreting insurance contracts and resolving coverage disputes.").

[8] To streamline the discussion of the issues, it is helpful to mention what is not at issue. First, there is no contention that L. A. Davis did not have a right to designate a different beneficiary on his Policy. (*See* MetLife Beneficiary Designation Form, Apr. 11, 2014 (Joint Tr. Ex. 3), in which L. A. Davis acknowledged that he had "revoke[d] any previous designations," "designate[d] the person, people, or entity named in Section III as Beneficiary(ies)," and "reserve[d] the right to change or revoke this designation at any time").) Second, neither the pleadings nor the pretrial order alleged that L. A. Davis lacked the requisite mental capacity on April 11, 2014, to change his beneficiary designation on his Policy. Any attempt to inject this new theory at trial is outside the scope of this litigation and, in any event, finds no support in the credible trial evidence. Third, in the pretrial order, Plaintiff contended that the MetLife beneficiary designation form documenting L. A. Davis's designation of Defendant as the beneficiary on the Policy was incomplete and, thus, invalid. (Doc. # 59, at 2.) Plaintiff abandoned this theory at trial.

the act of the influencing party." *Ex parte Estelle*, 982 So. 2d 1086, 1089 (Ala. 2007) (citation omitted). A banished beneficiary of a life insurance policy can bring a claim that the change in beneficiary was the product of undue influence. *Id.* at 1089–90 (seminal case holding that the former beneficiary of the decedent's life insurance policy had standing to challenge, on grounds of undue influence, a change of the policy beneficiary).

Alabama courts have addressed undue influence claims recurrently in the context of will contests and have applied a burden-shifting analysis. Initially, the will contestant must demonstrate "(1) that a confidential relationship existed between a favored beneficiary and the testator; (2) that the influence of or for the beneficiary was dominant and controlling in that relationship; and (3) that there was undue activity on the part of the dominant party in procuring the execution of the will." *Furrow v. Helton*, 13 So. 3d 350, 353–54 (Ala. 2008); *see also Pruitt v. Pruitt*, 343 So. 2d 495, 499 (Ala. 1976) ("Our cases have consistently held that when undue influence is asserted in a will contest, the contestant has the burden, in order to raise a presumption of undue influence, to prove a dominant confidential relationship and undue activity in the execution of the will by or for a favored beneficiary."). The presumption of undue influence attaches upon a showing of the latter three prerequisites. The beneficiary then must rebut the presumption by showing that the "transaction was fair, just, and equitable in every respect." *Wolfe*

*v. Thompson*, 235 So. 2d 878, 882 (Ala. 1970); *see also McGee v. McGee*, 91 So. 3d 659, 671 (Ala. 2012) (Murdock, J., concurring) ("By 1977, if not before, [Alabama] cases had begun to speak in terms of three distinct elements that, if proven, would aid a will contestant by giving rise to a presumption of undue influence, thereby shifting the burden of proof to the proponent of the will to establish that the will was the free act of the testator." (citing *Pruitt*, 343 So. 2d at 499)).

The parties rely predominately on Alabama's law of wills for the principles governing undue influence. With the parties in agreement, the court does the same. *See State Farm Life Ins. Co. v. Tidmore*, No. 7:14-CV-00657, 2016 WL 5390630, at *5 (N.D. Ala. Sept. 27, 2016) (applying the *Furrow* elements to analyze a claim of undue influence arising from a dispute as to competing beneficiary claims under a life insurance policy (citing *Furrow*, 13 So. 3d at 353–54)).

Plaintiff's evidence falls woefully short of establishing that Defendant had a dominant or controlling influence over L. A. Davis or engaged in undue activity in procuring the change of beneficiary as required by the second and third elements. Accordingly, Plaintiff cannot satisfy her burden on two of the three elements of her

undue influence claim.[9]  It is unnecessary, therefore, to opine on whether Defendant, who was the favored beneficiary, had a confidential relationship with L. A. Davis.

### 1. *Dominant and Controlling Influence (Second Element)*

"The law requires that a party, to be considered dominant in the confidential relationship, must exercise controlling influence over the testator's purposes." *Bolan v. Bolan*, 611 So. 2d 1051, 1057 (Ala. 1993).  Evidence, either circumstantial or direct, that "a beneficiary controls the personal, business, and household affairs of a testator is evidence of a dominant and controlling influence." *Hayes v. Apperson*, 826 So. 2d 798, 804 (Ala. 2002).  Thus, it logically follows that "[t]otal dependency by a testator on the favored beneficiary is . . . evidence of a dominant and controlling influence." *Id.*

The evidence, at best, suggested a close relationship between L. A. Davis and Defendant that revolved principally around L. A. Davis's providing emotional support for Defendant after his wife died and around their presumably shared

---

[9] The parties have not addressed the burden of proof for establishing the presumption (or, for that matter, broached discussion of the burden at all), but that omission need not detain the court long.  First, although federal common law on the burden appears to be lacking, regardless of whether the presumption requires proof of clear or convincing evidence or merely the preponderance of the evidence, Plaintiff has shown neither.  Second, placing the burden on Plaintiff to prove the presumption, rather than on Defendant to disapprove it, aligns with the federal common law presumption that "accords documents which appear valid on their face a presumption of validity against attacks based on undue influence or incompetent" and ensures that "ERISA plan administrators may safely rely on the paperwork they have on file." *Sun Life*

interest in fishing. But this is not enough to demonstrate that Defendant was dominant in his relationship with L. A. Davis. Dominance is lacking in the key areas noted in *Hayes*.

Plaintiff testified that she was L. A. Davis's primary caretaker during his extended illness. There was no evidence that L. A. Davis assumed any of the day-to-day responsibilities for L. A. Davis's hygiene, meals, or other personal needs before or after his cancer diagnosis. The evidence also was non-existent that L. A. Davis was dependent upon Defendant to assist him in any household matters.

Additionally, the record is bereft of evidence that Defendant handled any of L. A. Davis's financial or business affairs during L. A. Davis's lifetime. There was no evidence of joint bank accounts, joint ownership rights in any property, or joint business ventures. At different times, L. A. Davis had farming and restaurant businesses, but there was no evidence that Defendant had a financial or other stake in those endeavors. To the contrary, the testimony revealed that Defendant refused to manage L. A. Davis's restaurant when L. A. Davis moved from Alabama to Ohio, and that, later, after L. A. Davis's cancer diagnosis, Defendant would not help his ailing brother haul hay on the farm. Evidence of Defendant's dominance or control in any area of L. A. Davis's life is wholly lacking.

---

*Assur. Co. v. Tinsley*, No. 606-CV-00010, 2007 WL 1052485, at *4 (W.D. Va. Apr. 4, 2007), *aff'd sub nom. Sun Life Assur. Co. of Canada (US) v. Tinsley*, 266 F. App'x 228 (4th Cir. 2008).

Plaintiff offers up her best offense, but it comes up short. She contends that the fact that Defendant, and not Plaintiff, drove L. A. Davis from the hospital to Mamie's home on April 8, 2014, demonstrates dominance on the part of Defendant. But the trial testimony belied any such conclusion. At the hospital, L. A. Davis, not Defendant, told Plaintiff "he was riding with his brother." And there was no evidence that Defendant, or anyone else, coerced L. A. Davis to remain at Mamie's. L. A. Davis confirmed to the deputy sheriff, whom Plaintiff summoned to Mamie's residence on April 12, 2014, that he was "in good hands." (Def.'s Tr. Ex. 1.) Those are not the words of a person overborne by the influence of Defendant. Moreover, to the extent that, at trial, Plaintiff tried to suggest that L. A. Davis was under the influence of prescribed narcotics and, thus, was more susceptible to undue influence by Defendant, she provided no evidence of such and, in any event, her testimony was not credible.

The trial testimony otherwise was wholly conclusory. Multiple witnesses testified that, of the two brothers, Defendant was the "dominant" one, and Plaintiff added that Defendant "manipulated" her husband. When pressed for an example of Defendant's manipulative behavior, however, Plaintiff only could conjure up, again in conclusory terms, that Defendant "coerced him [L. A. Davis] into whatever he wanted to do because . . . he was the baby brother." The testimony did not go beyond these conclusory descriptions and hardly is the sort of

circumstantial evidence of which claims of undue influence are proven. Accordingly, Plaintiff cannot satisfy the second element required to establish a presumption of undue influence—that Defendant was dominant and controlling in his relationship with L. A. Davis.

## 2. *Undue Activity (Third Element)*

"Evidence proving that there was undue activity on the part of the named beneficiary in procuring the [change in beneficiary] is crucial to the determination of the existence of undue influence." *Wall v. Hodges*, 465 So. 2d 359, 363 (Ala. 1984). "[M]ere activity is not sufficient justification for finding undue influence. There must be evidence of active interference in procuring the [change in beneficiary]." *Bolan v. Bolan*, 611 So. 2d 1051, 1055 (Ala. 1993) (will contest). The evidence can be either direct or circumstantial, and the focus is on the beneficiary's level of activity and role in the preparation and execution of the change in beneficiary. *See McGee v. McGee*, 91 So. 3d 659, 673 (Ala. 2012).

As purported proof of Defendant's undue activity in the procurement of the beneficiary change, Plaintiff points to several factors. She emphasizes L. A. Davis's rapidly deteriorating health, the timing of the beneficiary change (two days prior to L. A. Davis's demise), L. A. Davis's shared living arrangement with Defendant, the unnatural selection of a collateral descendant as a beneficiary to the exclusion of a spouse of nearly two decades, and Plaintiff's isolation from her

husband. The court is cognizant of the tragic circumstances and the painful memories they produce for Plaintiff, but courts "should be extremely careful not to interfere with that right of free disposal which inheres in the ownership of property." *Harris v. Bowles*, 94 So. 757, 764 (Ala. 1922). The Alabama Supreme Court has stood by the rule that "'[t]he will of a person found to be possessed of sound mind and memory is not to be set aside on evidence tending to show only a possibility or suspicion of undue influence.'" *Id.* (quoting *Beyer v. Le Fevre*, 186 U.S. 114, 126 (1902)); *see also Sanford v. Coleman*, 418 So. 2d 856, 859 (Ala. 1982) ("But we need not here do more than repeat the oft-stated rule that the evidence, direct or circumstantial, must go further and afford ground for reasonable inference, not mere suspicion, that the favored beneficiary has been active in the procurement of the will . . . ."). The same applies to a change of beneficiary on an insurance policy.

Whether the circumstances could provide a foundation for undue influence is an entirely different matter from whether they did. There is nothing in the record showing that Defendant misled or deceived L. A. Davis into changing the beneficiary designation on his Policy. Plaintiff presents no evidence that L. A. Davis and Defendant discussed the change in the beneficiary designation form before it happened or that Defendant participated in completing the form. And, as already discussed, there is no evidence that, at any time prior to L. A. Davis's

death, Defendant was involved in L. A. Davis's financial or business affairs. Plaintiff's arguments of undue influence arise solely from suspicions that lack any evidentiary grounding. The absence of evidence of the exertion of any influence, much less undue influence, by Defendant over L. A. Davis in his decision to change his beneficiary is glaring. *Cf. Gilbert v. Gilbert*, 22 Ala. 529, 532 (1853) ("It is not enough that the testator is dissuaded by solicitations or argument from disposing of his property as he had previously intended; he may yield to the persuasions of affection or attachment, and allow their sway to be exerted over his mind; and in neither of these cases, would the law regard the influence as undue."). Accordingly, Plaintiff cannot satisfy the third element required to establish a presumption of undue influence—that there was undue activity on Defendant's part in procuring the execution of the beneficiary designation form.

### 3. *Summary*

There is a complete lack of evidence that Defendant destroyed the free will of L. A. Davis and substituted his wishes for the wishes of L. A. Davis. *See Ex parte Estelle*, 982 So. 2d at 1089. Plaintiff has failed to sustain her burden of proof on her claim of undue influence.

## B. <u>Fraud</u>

Plaintiff pleaded "fraud," but her theory of fraud has changed with the proverbial winds. No matter the theory, there is no evidence to support it.

## 1. *Forgery*

At trial, Plaintiff testified that the signature on the form designating Defendant as the beneficiary on the Policy was not her husband's. This theory is forgery. "Forgery is a species of fraud," and a "'forged instrument is void.'" *Fortis Benefits Ins. Co. v. Pinkley*, 926 So. 2d 981, 988 (Ala. 2005) (quoting *Ex parte Floyd*, 796 So. 2d 303, 308 (Ala. 2001)); *see also Life Ins. Co. of Ga. v. Smith*, 719 So. 2d 797, 809 (Ala. 1998). This theory has no less than three failings.

First, the forgery theory contradicts the parties' stipulation that L. A. Davis "*executed* a group life term insurance beneficiary designation form naming the Defendant, Johnson M. Davis, as the sole beneficiary of that . . . policy on the life of L. A. Davis . . . ." (*See* Order on Pretrial H'rg, at 3 (Doc. # 59) (emphasis added).) "Executing . . . means signing . . . ." *Guthery v. Persall*, 26 So. 3d 1250, 1254 (Ala. Civ. App. 2009) (holding that a complaint alleging fraud-in-the-inducement—namely, that "Mr. Guthery had been 'coerced and defrauded into *executing* . . . the warranty deed'"—did not plead a forgery claim). Plaintiff's stipulation that, on April 11, 2014, L. A. Davis signed the form designating Defendant as the beneficiary on his Policy "negate[s] the possibility that [L. A. Davis's] signature was not genuine." *Id.* That stipulation controls. *See* Fed. R. Civ. P. 16(b) (The Pretrial Order "controls the course of the action" unless modified by the court.).

Second, setting aside for the moment the binding nature of Plaintiff's stipulation, her testimony that the signature on the beneficiary designation form was not her husband's was not credible. Plaintiff presented no evidence that Defendant, or another at his direction, forged L. A. Davis's signature on the form. *See generally Davis v. Sterne, Agee & Leach, Inc.*, 965 So. 2d 1076, 1093 (Ala. 2007) (discussing the requirements for demonstrating forgery under Alabama law). Moreover, Plaintiff's inconsistent positions thoroughly undermine her credibility.

Third, even if L. A. Davis was not the one who put the pen to paper, proof that the signature is not in L. A. Davis's handwriting is not tantamount to proof that the signature was a forgery or that it was without his assent. Accordingly, Plaintiff did not prove a forgery.

**2. *Fraud in the Factum***

In contradiction to her forgery theory, Plaintiff's initial (and pretrial order) theory was that the signature was genuine, but that L. A. Davis had been "deceived into signing" the beneficiary designation form. *Fortis Benefits Ins. Co.*, 926 So. 2d at 988 (describing this species of fraud as fraud in the factum). (*See also* Pl.'s Pretrial Brief at 7 (arguing that L. A. Davis "was not aware of what he was signing" (Doc. # 70).) "[T]o constitute fraud in the factum, . . . the misrepresentation must go to the essential nature or existence of the contract itself, for example, a misrepresentation that an instrument is a promissory note when in

fact it is a mortgage." *Harold Allen's Mobile Home Factory Outlet, Inc. v. Early*, 776 So. 2d 777, 783 n.6 (Ala. 2000).

As to this theory, there was no evidence showing that L. A. Davis did not know that the document he signed was for the purpose of designating a new beneficiary on his Policy. To the contrary, the testimony at trial was that L. A. Davis knew precisely what sort of document he was signing. On this record, it would require nothing short of impermissible speculation and conjecture to infer any sort of trickery by Defendant (or at his direction) in procuring L. A. Davis's execution of the beneficiary designation form. The fact that Defendant gained financially by the change in beneficiary is not the *sine qua non* of fraud. Plaintiff did not prove fraud in the factum.

### 3.   *Summary*

At bottom, Plaintiff's theories of fraud never gained traction in fact, theory, or credibility. Accordingly, Plaintiff's fraud claim fails.

## V.  CONCLUSION

At the bench trial, Plaintiff did not prove that, on April 11, 2014, Defendant, through undue influence or fraud, caused her husband, L. A. Davis, to execute a beneficiary designation form naming Defendant as the beneficiary on his life insurance policy. She relied on speculation, but speculation is not proof. Accordingly, Plaintiff has not established the invalidity of the April 11, 2014

beneficiary designation. Judgment is due to be entered in favor of Defendant and against Plaintiff.

DONE this 31st day of August, 2017.

_____/s/ W. Keith Watkins_____
CHIEF UNITED STATES DISTRICT JUDGE